UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GENE FLEISNER ) <br> d/b/a SUPER NOVA CORP., ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> ) | Case No. _____ |

## PETITION TO QUASH IRS SUMMONS

COMES NOW THE PETITIONER, Gene Fleisner ("Fleisner"), owner and manager of Super Nova Corp., by and through his attorneys, a Law, and respectfully petitions this Court to quash certain Internal Revenue Service summons issued by the Department of the Treasury Internal Revenue Service. The summons seeks records from a Third-Party Record-keeper regarding internal revenue matters allegedly involving the Petitioner.

## INTRODUCTION

This IRS summons is unsuited for this court's judicial imprimatur for one reason: IRS no longer abides the strictures of *LaSalle*, *infra*, that permitted such judicial enforcement of civil summonses outside the criminal process, and further, the IRS is no longer institutionally committed to the limits of *Tweel*, *infra*, misusing the civil process to acquire information for criminal referral and investigation, outside the rules of the grand jury and without affording proper notice to taxpayers or their representatives. This case far transcends one single taxpayer in one single audit; it goes to the core of the use of an IRS summons and new IRS protocols, which ignore three decades of court imposed restrictions on its actions against taxpayers.

1

## JURISDICTION

The instant Petition is filed pursuant to 26 U.S.C. § 7609(b)(2), and this Court has subject matter jurisdiction over this proceeding under 26 U.S.C. § 7609(h).

## PARTIES

1. The Petitioner, Gene Fleisner and Super Nova Corp. is located at N140 W19686 Cedar Lane, Richfield, WI 53706.

2. The target of the summons is Marvin D. Hatcher, accountant for Super Nova Corp., and is located at 3203 55th Court, Unit 158, Kenosha, WI 53144.

3. The Respondent, United States of America, and its agent, the Department of the Treasury Internal Revenue Service ("IRS"), has its offices at N14 W24200 Tower Place, Suite 202, Waukesha, WI 53188-1159.

## FACTUAL BACKGROUND

4. On October 21, 2016, the Internal Revenue Service ("IRS") issued a Summons, a true and correct copy of which is attached as "Exhibits A" filed in support of this Petition, directing Marvin D. Hatcher, accountant for Super Nova, to appear and produce a multiplicity of records and documents allegedly relating to the petitioner Fleisner in an inquiry concerning the business tax filing for tax year 2014, relating to Super Nova Corp.

5. Marvin D. Hatcher is a Third-Party Record-keeper located within this district under 26 U.S.C. § 7603(b)(2).

## ALLEGATIONS

6. From counsel's professional experience, and as further confirmed by comments made by IRS and DOJ Tax Division personnel at an American Bar Association-sponsored Criminal Tax Fraud Conference in San Francisco, upon information and belief, and as discovery will show, the IRS is no longer institutionally committed to abiding by the strictures of *Tweel*.

*See United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977) and *United States v. Dahlstrum*, 493 F.Supp. 966 (C.D. Cal. 1980). Instead, through the use of so-called "fraud technical advisors," upon information and belief, and as discovery will show, the IRS institutionally utilizes civil audits as subterfuge methods to acquire information and discovery, and especially interviews of the target, to build criminal cases, often in manners contrary to the dictates of *Tweel*. As an example, the goal is to "lull" the taxpayer into believing the taxpayer is under a purely civil inquiry when in fact the IRS intends and is using the civil process in service to a criminal case in order to elicit admissions from the unsuspecting taxpayer. The *modus operandi* of the program, upon information and belief, is to not formally refer the case for criminal prosecution until the IRS Revenue Agent ("RA") summons the target for interviews and elicits incriminating information, without the taxpayer knowing the true intent of the interview is admissions for a case the RA has already determined will be a criminal referral. The telltale indicators of such an illicit audit, from counsel's prior experience and review, includes: (a) the RA summonsing the taxpayer in for a set of interrogations after the RA has already determined the case appropriate for criminal referral; (b) an RA being assigned to the case from an unusual office (not the taxpayer's regional office); (c) an RA handling more than a 3-year tax period and being involved in multiple stages of a matter (such as acting as auditor, and collector, with audits, notices of deficiency, and collection notices); (d) an RA with unexplained access to grand jury materials; and (e) an RA who tends to testify for the government in criminal cases. (Decl. of Michael Cooper, ¶ 4) (hereinafter, "Cooper Decl.").

7. IRS Revenue Agent Greg Jackson ("RA Jackson") was repeatedly informed by the undersigned and members of Barnes Law that a review for accuracy regarding the 2014 return was taking place. Despite this, he insisted and obsessed over scheduling an in-person visit with Mr. Fleisner, a visit which would have undermined client privacy rights and is a telltale

3

indicator of an audit with illicit intentions in inquiry and imprimatur of bad faith unwarranted for judicial approval. In sum, these actions by RA Jackson are consistent with a pattern of rogue IRS conduct across the country and particularly in Wisconsin because of its lax tax regulation enforcement and weak supervision. (Cooper Decl. ¶ 6)

8. The IRS routinely fails to follow the required administrative steps in a criminal inquiry that predicated the Court's decision in *LaSalle*. Principally, this includes routinely using civil summonses to aid and support a grand jury inquiry, opening a grand jury inquiry without any recommended referral for prosecution, and denying citizens under inquiry and investigation *Miranda* notices or their administrative conference rights. These are the protocols the IRS assured the Supreme Court they would follow. It was IRS's adherence to these protocols that predicated generous use of summonses by criminal investigators while, at the same time, prevented any potential misuse of civil summonses through pursuit of evidence of criminal wrongdoing outside the grand jury process and the rules of criminal procedure. These protocols are infirm and easily evaded under current tax policy administration. Even more egregious, the IRS no longer follows the limits proscribed by *Tweel*, frequently fails to disclose to targeted taxpayers the criminal referral intended or in process concerning them, and more than occasionally, makes material misrepresentations to them about the criminal nature of audits and collection matters. As a result,, counselors and taxpayers increasingly cannot rely on the attestations of IRS agents and auditors when making critical compliance and testimonial decisions in what is supposed to be the civil part of the investigative process. *See United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977); *United States v. Dahlstrum*, 493 F.Supp. 966 (C.D. Cal. 1980). *Id*. at ¶ 8.

# MEMORANDUM OF LAW IN SUPPORT OF PETITION TO QUASH

The Fourth, Fifth and Sixth Amendments safeguard the rights of the individual from the encroachment of the state. When an agency calls upon the power of the judiciary to coerce disclosures under pain of contempt, and circumvent the search warrant protocols and grand jury protections of individuals, the court carefully guards its power of compulsory process against any and all potential misuse or possible abuse. Put simply, "a court may not permit its process to be abused." *See United States v. Powell*, 379 U.S. 48, 58 (1964). "Congress has provided protection from arbitrary or capricious action by placing the federal courts between the Government and the person summoned." *United States v. Bisceglia*, 420 U.S. 141, 151 (1974).

This inter-positional duty and intermediary role requires a court not lend its judicial imprimatur to any administrative summons without a finding of good faith in the agency's conduct and no potential for abuse of the court's process. *See id*. at 146 ("[A]n Internal Revenue Service summons can be enforced only by the courts.") As the Court instructed in *Powell*: "Such an abuse [of process] would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or put pressure on him to settle a collateral dispute, *or for any purpose reflecting on the good faith of the particular investigation*." *Powell*, 379 U.S. at 58 (emphasis added).

In order to grant enforcement of such a summons, the court must minimally find from all facts "that the summons (1) was issued pursuant to a 'legitimate purpose'; (2) seeks information 'relevant' to that purpose; (3) seeks information that is 'not already within the Commissioner's possession'; and (4) satisfies all 'administrative steps required by the Code.'" *See Stewart v. United States*, 511 F.3d 1251, 1254 (9th Cir. 2008) (quoting *Powell*, 379 U.S. at 57-58)).

A legitimate purpose is information sought and relevant to *civil* tax purposes. *See United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997). Information is relevant if it may be

5

probative of the *civil* tax purpose. *See id*. The definition of IRS "possession" of records includes any records the Service can easily access. *See United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) ("The obligation is upon the Commissioner to demonstrate that the material requested is not within his possession or, that if it is technically within his possession, he has no practical way of obtaining the desired item.") The statutory requirements for issuing a summons include attestation of the summons to protect the party served with its authenticity. *See Henderson v. United States*, 778 F.Supp. 274, 277 (D.S.C. 1991). *But see Kernan v. Internal Revenue Service*, 2007 WL 1288155, *2 (D. Hawai'i) (Slip Copy dated April 30, 2007) (holding that the lack of attestation is an insufficient basis to quash an administrative summons without substantial prejudice) (relying on *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (in turn holding that technical violations in serving the summons are only sufficient to quash the summons if prejudice exists)).

Additionally, "the taxpayer may challenge the summons on any appropriate grounds" including any other abuse of the court's process. *United States v. Riewe*, 676 F.2d 418, 420 (10th Cir. 1982) (citing *Reisman v. Caplin,* 375 U.S. 440, 449 (1964)); *see also United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc). This is a twin requirement: first, whether the Service is acting in good faith in seeking the information from the summons for a civil purpose without harassment, focusing on the motives of the institution and the individual agent; and second, measuring whether the summons could have the effect of an abuse of process.

To demonstrate good faith, the Service must show it seeks this information to serve their "interest in civil as opposed criminal, remedies." *United States v. Cortese*, 614 F.2d 914, 917 (3rd Cir. 1980). Equally, the Service cannot ask the aid of the court to coerce compulsory process if the agent demonstrates animus or harassment. *Id*. at 921.

6

"Enforcement should be denied, however, if it is issued for an improper purpose such as solely in furtherance of a criminal investigation." *United States v. Zack*, 521 F.2d 1366, 1367 (9th Cir. 1975) (citing *Riesman v. Caplin*, 375 U.S. 440, 449 (1964)). Where "the sole objective of the investigation is to obtain evidence for use in a criminal prosecution" then "the purpose of the summons [will] be said to violate the Fourth Amendment and enforcement [of the summons] be denied." *United States v. Theodore*, 479 F.2d 749, 753 (4th Cir. 1973); see *also United States v. Lewis*, 604 F.Supp. 1169 (E.G. 1985).

As for preventing the effect of enforcement from abusing the court's process, the court must consider the prophylactic effect on investigative conduct by the agency, public confidence in a court's issuance of process under pain of contempt, and the privacy concerns of the individual. "In terms of protection to the individual, a summons submitted to a court for enforcement is at least equivalent to a search warrant." *United States v. Roundtree*, 420 F.2d 845, 851 (5th Cir. 1970). The district court must "limit the invasion of privacy through the judicial scrutiny to which a summons is subject for its enforcement and through the standards enumerated in *Powell* of legitimate purpose, proper procedure, relevance, and refusal to allow abuse of the courts' process." *Id*. It "would be a misuse of the tax summons for the IRS to endeavor to use it to obtain evidence for use in an existing criminal prosecution." *Id*.

The petitioner may stand in the shoes of those not before the court. *See United States v. Equitable Trust Company*, 611 F.2d 492 (4th Cir. 1979) (petitioner "may bring the abuse-of-court-process contention to the District Court's attention and ask the District Court not to ignore the same, even if the abuse complained of involves no violation of any right" of his); *see also United States v. Hamilton Federal Sav. and Loan Ass'n*, 566 F.Supp. 755 (E.D.N.Y.1983).

Discovery is necessary whenever the petitioner must rely on information peculiarly within the knowledge or files of the government. *See United States v. Security Bank & Trust*

7

*Co.*, 661 F.2d 847, 850 (10th Cir. 1981). Wherever there is an allegation of agent animus or agent harassment then "discovery should be provided." *United States v. Cortese*, 614 F.2d 914, 921 n.12 (3rd Cir. 1980). The same applies to a sufficient allegation of a pending criminal investigation. *See United States v. Genser*, 595 F.2d 146, 152 (3rd Cir. 1979).

The Supreme Court, in fact, presumes the right to discovery prior to any adjudication in summons litigation, notwithstanding the Government's showing on the paper. *Powell*, 379 U.S. at 59. *Powell's* context suggests that after an adequate showing. In *Powell,* the Supreme Court stated: "[t]his [adequate showing by the Government] does not make meaningless *the adversary hearing to which the taxpayer is entitled* before enforcement is ordered." *Id*. (emphasis added). Here, discovery is needed, an evidentiary hearing compelled, and the Summons rightfully quashed for the reasons set out below.

**I.      The Material is Being Sought for Impermissible Criminal Purposes & There is an Institutional Commitment to Refer This Matter to the Department of Justice.**

The Supreme Court first warned in *Reisman v. Caplin*, 375 U.S. 440, 448 (1964):

> Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution.

If there is already a referral or grand jury concerning the same entity at issue, then this precludes summons enforcement. *United States v. Michaud*, 907 F.2d 750, 755 (7th Cir. 1990). "No summons may be issued . . . with respect to any person if a Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d)(1). That complete bar is not an open door to misuse civil summonses by delaying criminal referrals. The High Court returned to the same warning a decade later:

> We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and

8

the Service merely would like to gather additional evidence for the prosecution. Such a delay would be tantamount to the use of the summons authority after the recommendation and would permit the Government to expand its criminal discovery rights. Similarly, the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, regardless of the status of criminal cases.

*United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316-17 (1978).

And once again another decade later:

[T]he IRS may not issue a summons once it has recommended prosecution to the Justice Department, nor may it circumvent this requirement by delaying such a recommendation in order to gather additional information. When Congress codified the essence of our holding in sec. 7602(c) it apparently shared our concern about permitting the IRS to encroach upon the rights of potential criminal defendants. The Report of the Senate Finance Committee noted that "the provision is in no way intended to broaden the Justice Department's right of criminal discovery or to infringe on the role of the grand jury as a principal tool of criminal prosecution.

*United States v. Stuart*, 489 U.S. 353, 362-63 (1989).

Put simply, "enforcement can and should be denied when the Service is attempting to exploit its civil investigatory powers as a de facto grand jury." *Michaud*, 907 F.2d at 752.

Alternatively, as *LaSalle*, noted, "the good-faith standard will not permit the IRS to become an information-gathering agency for other departments, including the Department of Justice, *regardless of the status of criminal cases*." *LaSalle*, 437 U.S. at 317 (emphasis added). The information sought here clearly will be "information gathering" for the Department of Justice given the federal grand jury inquiry into these matters, their past pattern of such conduct, and their refusal to make clear the nature of this inquiry.

## II.     The IRS Failure to Comply with Statutory Requirements.

The IRS failed to comply with the statutory requirements for issuing a third-party "civil" summons. *See* 26 U.S.C. § 7609(a)(1)-(2) and 26 U.S.C. § 7603. The Internal Revenue Code requires that all persons summoned be served with an attested copy of the Summons. *See id.*

9

The copy made available to Fleisner is an unattested summons. *See* Ex A. "[The] valid purpose for this mandate is to assure the person receiving the summons that what he received was in fact a true copy of the original summons." *See Henderson v. United States*, 778 F.Supp. 274, 277 (D.S.C. 1991).[1] Failure there required quashal, as it does here. *See Henderson*, 778 F.Supp. 274.

## III. The IRS's Institutional Refusal to Abide the Court-Imposed Limits of LaSalle & Tweel Make Judicial Enforcement of this Summons a Misuse of this Court's Power.

"Future cases may well reveal the need to prevent other forms of agency abuse of congressional authority and judicial process." *LaSalle*, 437 U.S. at 318 n. 20. This is such a case. The Supreme Court, from its inception, interpreted these set of statutes restrictively to avoid "constitutional considerations" that would otherwise arise. *Reisman*, 375 U.S. at 448, n.8. The Court's Constitutional conforming constructions of the past saved the statute from Constitutional challenge. *See Michaud*, 907 F.2d at 755, n.1 (Coffey, concurring) (necessary to limiting interpretation to summons statute preserve constitutionality of statute). Now, the problem is here. The Court's fear was the "likelihood that discovery would be broadened or the role of the grand jury infringed" by criminal investigative use of civil summonses. *LaSalle*, 437 U.S. at 312.

> Nothing in 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation . . . .

*Id*.

"Only after the officials of at least two layers of review have concurred in the conclusion of the special agent does the referral to the Department of Justice take place." *Id*. at 315. The Court

---

[1] As noted above, some courts have determined that attestation is not in and of itself a grounds to quash the summons. *See Kernan*, 2007 WL 1288155 at *2 (relying on *Cook*, 104 F.3d at 889).

10

further relied upon the protections of the innocent taxpayer from publicly humiliating disclosure or criminal inquiry, again accepting the assurances of the IRS they would follow protocol.

> It should also be noted that the layers of review provide the taxpayer with substantial protection against the hasty or overzealous judgment of the special agent. The taxpayer may obtain a conference with the district Intelligence Division officials upon request or whenever the chief of the Division determines that a conference would be in the best interests of the Government. If prosecution has been recommended, the chief notifies the taxpayer of the referral to the Regional Counsel.

*Id*. at 315-16.

These extensive administrative rules and regulations governing the criminal referral process are no longer effectively meaningful. In fact, the Service now routinely discards these internal rules, convening grand juries without any referral in place, and the taxpayer protections are now as useful as a house without a foundation or a moat without a bridge. With the rationale gone, and the taxpayer protections gone with it, the Service should not be allowed to augment and supplement their criminal investigative tools with this court's compulsory process. The Court limited its "prophylactic restraint" to formal referrals, with other cases decided individually. The goal of not mixing grand juries with civil summonses by awaiting the referral process depended upon the government's assertions that the agent could not invoke grand jury process without the difficult and full referral process through the hierarchy of the Internal Revenue Service and the Department of Justice. *See LaSalle*, 437 U.S. at 313-16.

These laws exist for manifest and myriad reasons. As a matter of sound public policy, taxpayers have to be able to trust that IRS civil auditors and collection officers aren't secretly building a criminal case against them, or taxpayers, and the tax professionals who represent them, will stop cooperating with IRS in audits and collection matters. The law so compels and so conforms. *See United States v. Blue*, 384 U.S. 251, 254 (1966); *United States v. Dahlstrum*, 493 F.Supp. 966 (C.D.Cal.1980); *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977).

11

In *Tweel*, an IRS agent informed a taxpayer that he was conducting an audit of the taxpayer's past returns. The taxpayer's accountant asked the agent if an IRS "special agent" was involved in the investigation, to which the agent truthfully answered "no," leading the accountant to believe that the agent was conducting only a civil audit. What the agent did not disclose was that the audit was not routine, but part and parcel of a criminal investigation by other agents. The taxpayer's accountant in *Tweel* then voluntarily presented the agent with his own and the taxpayers' records, which the agent microfilmed. The Fifth Circuit held that the agent's microfilming of the records constituted an illegal search, compelling suppression or dismissal as appropriate. *Id*. at 298-300. The court condemned the "the agent's failure to apprise the appellant of the obvious criminal nature of this investigation" as nothing less than "a sneaky deliberate deception by the agent" and clearly "a flagrant disregard for appellant's rights." Silence constitutes fraud "where there is a legal or moral duty to speak" or "where an inquiry left unanswered would be intentionally misleading." *United States v. Prudden*, 424 F.2d 1021, 1032 (5th Cir. 1970). Where the "IRS still succeeded in masking the undeniable criminal nature of this investigation and materially deceived this appellant" then a court "cannot condone this shocking conduct by the IRS. Our revenue system is based upon the good faith of the taxpayers and the taxpayers should be able to expect the same from the government in its enforcement and collection activities." *Tweel*, 550 F.2d at 299-300.

Yet, this *Tweel* dictate no longer cabins the conduct of IRS officers and agents, as evident here. From counsel's personal experience and further confirmed by comments by IRS and DOJ personnel at a recent American Bar Association-sponsored Federal Criminal Tax Fraud Conference in San Francisco, upon information and belief, as discovery will show, the IRS no longer is institutionally committed to abiding the strictures of *Tweel*. *See United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977); *United States v. Dahlstrum*, 493 F.Supp. 966 (C.D. Cal. 1980).

12

Instead, through the use of so-called "fraud technical advisors," the IRS institutionally utilizes civil audits as subterfuge methods to acquire information and discovery, and especially interviews of the target, to build criminal cases, often in manners contrary to the dictates of *Tweel*. As an example, the goal is to deceive the taxpayer into believing the taxpayer is under a purely civil inquiry when in fact they intend and are using the civil process as a criminal case in order to elicit admissions from the unsuspecting taxpayer.

The *modus operandi* of the program is to not formally refer the case for criminal prosecution until the RA summons the target for interviews and elicits incriminating information, without the taxpayer knowing the true intent of the interview is admissions for a case the RA has already determined as a criminal referral. The telltale indicators of such an illicit audit, from counsel's prior experience and review, includes: (a) the RA summonsing the taxpayer in for a set of interrogations after the RA has already determined the case appropriate for criminal referral; (b) an RA being assigned to the case from an unusual office (not the taxpayer's regional office, for example); (c) an RA handling more than just a designated tax period in the summons and being involved in multiple stages of a matter (such as acting as auditor, and collector, with audits, notices of deficiency, and collection notices); (d) an RA with unexplained access to grand jury materials; and e) an RA who tends to testify for the government in criminal cases.

Similarly, in two more recent cases involving less offensive and less rights-abridging conduct, the court recognized the government abused its power by using civil proceedings to gather evidence for a criminal prosecution. *See United States v. Stringer*, 408 F.Supp.2d 1083 (D. Or. 2006); *United States v. Scrushy*, 366 F. Supp.2d 1134 (N.D. Ala. 2005). Nor are such concerns foreign to the courts. *See, e.g.*, *United States v. Rodman*, 519 F.2d 1058, 1059 (1st Cir. 1975) (indictment dismissed where subject of SEC investigation was induced to cooperate based on representation that SEC would make a strong recommendation against criminal prosecution

13

and no such recommendation was made); *United States v. Rand*, 308 F. Supp. 1231, 1235 (N.D. Ohio 1970) (criminal case dismissed where it was based on testimony of subject at SEC trial induced by representation that there would be no criminal prosecution).

In those cases, the courts noted the government improperly used civil process to develop evidence for the criminal cases and, in so doing, violated the defendants' constitutional rights and departed from the proper administration of justice. Under those circumstances, both courts opined that the government was obligated, but failed, to inform the defendants of the specific criminal investigations that were ongoing. They concluded that the standard warnings given by the SEC attorneys to the defendants – informing them that the government could use the information in any criminal proceeding – did not suffice. Based on the government's conduct, the courts sanctioned the government by suppressing the defendant's deposition testimony, *Scrushy*, *supra*, or dismissing the indictment, *Stringer*, *supra*. Here, the IRS seeks affirmative endorsement of its prior conduct and ongoing pattern of conduct by seeking this court's imprimatur on its conduct through summons enforcement; that imprimatur should be withheld.

As a sister district court held half a century ago in forewarning:

> The Constitution of the United States, the statutes, the traditions of our law, the deep-rooted preferences of our people speak clearly.  They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure.  That is the inquisitorial body provided by our fundamental law to subpoena documents required in advance of a criminal trial, and in the preparation of an indictment or its particularization.  To encourage the use of administrative subpoenas as a device for compulsory disclosure of testimony to be used in presentments of criminal cases would diminish one of the fundamental guarantees of liberty.  Moreover, it would sanction perversion of a statutory power.  The power under § 3614 was granted for one purpose, and is now sought to be used in a direction entirely uncontemplated by the lawgivers.  The limitations implicit in every grant of power are that it will be used not colorably, but conscientiously for the realization of those specific ends contemplated by the donors of the power.

*United States v. O'Connor*, 118 F.Supp. 248, 250-51 (D. Mass. 1953).

14

# CONCLUSION

WHEREFORE, for all the foregoing reasons, Mr. Fleisner respectfully requests: (1) an order from this Court QUASHING the controversial IRS Summons that exists with regard to the Third-Party Record-keeper named above; or alternatively (2) ordering discovery and an evidentiary hearing in this matter to determine whether the Summons was issued in good faith.

Respectfully submitted on this the 7th day of November 2016.

        BARNES LAW
        Attorneys for the Petitioner

        /s/ Michael S. Cooper
        MICHAEL S. COOPER
        CA State Bar No. 275189
        (Admission Pending)

        GENDE LAW OFFICE, S.C.

        /s/ James J. Gende II
        James J. Gende II
        WI State Bar No. 1030921